IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LARKLAND GASSOWAY,

    Petitioner,                   No. 2:08-cv-0652-JFM (HC)

   vs.

K. MENDOZA-POWERS, Warden,

    Respondent.                ORDER

_____/

        Petitioner is a former state prisoner on parole proceeding through counsel with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is proceeding before a United States Magistrate Judge with the consent of the parties pursuant to 28 U.S.C. § 636(c). See Orders filed August 30, 2007 and December 11, 2008.

        Petitioner challenges his 2004 conviction on charges of possession of a controlled substance and possession of controlled substance paraphernalia, enhanced by findings that petitioner had suffered a prior conviction and two separate prior prison terms following prior felony convictions. This action is proceeding on petitioner's amended petition, filed February 21, 2007, in which petitioner claims that his constitutional rights were violated by the trial court's decision to allow petitioner to represent himself.

/////

1

FACTS[1]

> While on probation for possession of a controlled substance, [petitioner] failed to report to his probation officer and was later found in possession of cocaine and related paraphernalia. Stockton police officers spotted [petitioner] standing up from behind a garbage can. At his feet was a homemade pipe. About 12 inches from the pipe, the officers found cocaine base.
>
> After a hearing in which he represented himself, [petitioner] was found to have violated probation. Thereafter, the district attorney filed an information charging [petitioner] with felony possession of a controlled substance and misdemeanor possession of paraphernalia, along with prior strike and prison term allegations. After a jury trial in which [petitioner] represented himself, he was convicted of the crimes as charged. The trial court found true the prior strike and prison term allegations. The court sentenced [petitioner] to a total term of six years on the new charges with a consecutive eight months for the case in which [petitioner] violated probation.

People v. Gassoway, slip op. at 1-2.

ANALYSIS

I. Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the

---

[1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Gassoway, No. C048317 (Sept. 19, 2006), a copy of which is in the record as Lodged Document No. 4.

governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

II. Petitioner's Claim

Petitioner claims that his constitutional rights were violated when the trial court allowed him to represent himself even though it was apparent that he was not able to competently and intelligently do so. The last reasoned rejection of this claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court of appeal rejected the claim as follows:

> [Petitioner] asserts the trial court erred in allowing him to represent himself because "he was substantially disabled and therefore he could not genuinely realize the risk of self-

3

representation or the complexities of the case." He contends the sentencing consequences and procedural elements of the case were beyond his power to comprehend. We conclude the trial court did not err in granting [petitioner]'s motion to represent himself.

"Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' [Citation.]" (*Faretta v. California* (1975) 422 U.S. 806, 835 [45 L.Ed.2d 562, 581-582] (*Faretta*).) "No particular form of words is required in admonishing a defendant who seeks to waive counsel and elect self-representation; the test is whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case. [Citation.]" (*People v. Koontz* (2002) 27 Cal.4th 1041, 1070.)

On April 19, 2004, [petitioner] represented himself at a hearing to determine whether he had violated probation by failing to report to his probation officer. The court determined he violated probation.

On May 18, 2004, Judge James Hammerstone arraigned [petitioner] on the current charges. [Petitioner] stated that he wanted to represent himself, and the court responded: "In your situation, someone who represents himself has an idiot for a lawyer, or fool for a client." [Petitioner] acknowledged he had heard that before from Judge Hammerstone. The court concluded: "You were in prop per on other matters. I'll allow you to be pro per." When the court asked what [petitioner] intended to do about the charges, [petitioner] said: "Can I actually get a lawyer?" The court responded: "Deny." After asking for transcripts, [petitioner] reiterated his intention, saying: "I'd like to represent myself." He added that he wanted a "fast and speedy trial." The court asked: "Well, how do you get to trial?" To this rather general question, [petitioner] did not have a specific answer other than to say that he was ready to proceed.

This was not [petitioner]'s first foray into self-representation. Several years ago, Judge Hammerstone heard and denied [petitioner]'s request to represent himself in a felony proceeding. We reversed the conviction on appeal, finding the trial court violated [petitioner]'s right to represent himself even though [petitioner] lacked legal qualifications and did not appear to be able to represent himself competently. (*People v. Gassoway* (Nov. 15, 2001, C036224) [nonpub. opn.].)

On July 6, 2004, [petitioner] appeared before Judge Thomas Harrington for a pretrial conference. During the

4

conference, [petitioner] told the court he needed an interpreter to explain the legal proceedings. The court attempted to correct [petitioner] by telling him that interpreters were for language translations, not to function as lawyers. Although [petitioner] continued to ask for someone to explain the legal proceedings, he made it clear he did not want an attorney. Later in the hearing, the court asked [petitioner] if he wished to have an attorney. [Petitioner] said he did not. The court asked: "Do you read the English language?" [Petitioner] replied: "Somewhat, yes." At this point, the court had [petitioner] fill out a *Faretta* waiver form and then went over the form, point by point, with [petitioner], including discussions concerning [petitioner]'s trial rights. [Petitioner] told the court he attended high school to 11th grade and had some further education while incarcerated and that he had represented himself in earlier proceedings. The court advised [petitioner] that he could be represented by the public defender's office and that he should consult with counsel before making the decision to represent himself. The court also told [petitioner] he would be required to follow all rules of criminal procedure and evidence, would be opposed by an experienced deputy district attorney, and would be responsible for his own defense to the specific crimes charged. Concerning the risk of representing himself, the court informed [petitioner] he could be sentenced to a maximum of 11 years, with another five years for prior prison terms.

After this extensive and exhaustive colloquy, the trial court denied [petitioner]'s request to represent himself. It concluded [petitioner] did not understand or did not wish to acknowledge his understanding of "his right to have the recommendation of counsel on whether or not he should proceed" and of the sentencing risk.

Two days later, on July 8, 2004, the case returned to Judge Hammerstone's courtroom. The court stated: "I have read a copy of the proceedings had before Judge Harrington July 6th whereby he indicated that [[petitioner]] should not proceed in pro per. [¶] However, one of the rulings – the grounds for that is that [[petitioner]] told him – him being Judge Harrington – that hd did not understand that the would have the right to talk to a lawyer in regards to his waiver of counsel and his desire to proceed in pro per. [¶]  I don't think that is a component of a competent waiver." Reminding [petitioner] of the warnings Judge Harrington gave, Judge Hammerstone asked [petitioner] if he wished to waive his right to counsel. [Petitioner] responded affirmatively, and the court allowed [petitioner] to represent himself.

During trial, [petitioner] made a few statements that he now cites as evidence that he was "substantially disabled" and incapable of conducting his own defense. For example, he misunderstood the effect of filing a writ petition, claiming "everything is supposed to stop because I say so." He attempted to introduce evidence that, on the day of his arrest, he had already used cocaine, ostensibly to

5

show that the cocaine found near him was not his (because he had already used his own). [Petitioner] explained to the court that he intended to defend against the charges by showing that he could not have planned to possess drugs because he was addicted. He described this defense as "the abhorrent behavior downward." During the trial on the prior convictions, he stated a belief that he was being tried for those crimes a second time or that he was being tried for a crime of which he had been acquitted.

[Petitioner] asserts the record establishes he was not fully made aware of the risks of self-representation. To the contrary, the trial court reviewed with [petitioner] a form listing his rights and the risks of self-representation and informed him of the sentencing risk. This is not a case in which the court failed to give proper admonitions. [Petitioner] instead contends he was not capable of understanding the court's admonitions and making an informed decision to represent himself. Although [petitioner] is admittedly a homeless drug addict, he was able to communicate in court and had, at least, the minimal ability to conduct a defense. That his defense was not effective does not establish the trial court erred in granting the *Faretta* motion. "[A] proclivity to boast or exaggerate, a tendency to digress in argument, a shaky grasp of the legal concept of relevancy, even a certain tangentiality in speech patterns does not necessarily mean that a defendant lacks a rational and factual understanding of the proceedings, the basic criterion for competency. [Citation.]" (*People v. Koontz*, *supra*, 27 Cal.4th at p. 1073.)

[Petitioner] asserts that, because he asked for a lawyer during his arraignment and the court denied the request, we must reverse. In context, however, the request for a lawyer was not a request to be represented by a lawyer. Just before the request, [petitioner] stated his desire to represent himself. Soon after the request, [petitioner] reiterated his desire to represent himself. Therefore, the request for a lawyer can best be interpreted as a request for advisory counsel. [Petitioner] makes no contention that the trial court should have appointed advisory counsel.

"With [[petitioner]] representing himself," complains [petitioner], "his case was reduced to a farce. Allowing [[petitioner]] to waive counsel was demeaning and constituted a mockery of justice. [Petitioner] provides no authority for this proposition. The trial court was bound by *Faretta* to permit [petitioner] to represent himself, even if he damaged his chances for acquittal. "It is well established that '[t]he only [competency] determination a trial could must make when presented with a timely *Faretta* motion is "'whether the defendant has the mental capacity to waive his constitutional right to counsel with a realization of the probable risks and consequences of his action.' [Citations.] It is not, however, essential that defendant be competent to serve as counsel in a criminal proceeding . . . .'"

6

> [Citation.]" (*People v. Poplawski* (1994) 25 Cal.App.4th 881, 888.)
>
> [Petitioner] cites several cases in which the denial of a *Faretta* motion was upheld on appeal because the defendant was incapable of conducting his own defense. (See *People v. Manago* (1990) 220 Cal.App.3d 982; *People v. Watkins* (1992) 6 Cal.App.4th 595; *in re Shawnn F.* (1995) 34 Cal.App.4th 184.) These cases, however, are fundamentally different. There, the trial courts were able to observe the defendants, personally, and determine they were incompetent to make the decision to represent themselves. Here, we have only the cold record. While it is true that Judge Harrington denied the *Faretta* motion, he did so on the narrow ground that [petitioner] did not understand or, importantly, did not wish to acknowledge his understanding of the right to confer with an attorney about his choice and the sentencing risk involved in the case. Judge Hammerstone, who had more experience with [petitioner], disagreed, and the record supports that position because it shows [petitioner] was apprised of those rights and risks. Reviewing Judge Hammerstone's determination, we cannot say that the record, with its inability to convey fully [petitioner]'s demeanor and comportment, is sufficient to reverse the granting of [petitioner]'s motion, consistent with his constitutional right to waive counsel and represent himself.

People v. Gassoway, slip op. at 2-9.

The right to counsel guaranteed by the Sixth Amendment "has been interpreted to encompass 'an independent constitutional right' of the accused to represent himself at trial, and thus waive the right to counsel." Stenson v. Lambert, 504 F.3d 873, 882 (9th Cir. 2007) (quoting Faretta v. California, 422 U.S. 806 (1975)).

> Such waiver, however, must be "knowing, voluntary, and intelligent[.]" Iowa v. Tovar, 541 U.S. 77, 88, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004) (citing Faretta, 422 U.S. at 806, 95 S.Ct. 2525); Faretta, 422 U.S. at 835, 95 S.Ct. 2525 ("the accused must knowingly and intelligently forgo" the right to counsel) (citing Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)) (internal quotation marks omitted).

Stenson, id. "Although a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open." Faretta, at 835 (citations omitted).

7

No specific colloquy is required by the Constitution or the decision in Faretta. Lopez v. Thompson, 202 F.3d 1110, 1117 (9th Cir. 2000) (en banc). However, the United States Court of Appeals for the Ninth Circuit has

> gleaned a three-factor test from *Faretta*, under which "[i]n order to deem a defendant's *Faretta* waiver knowing and intelligent, the district court must insure that he understands 1) the nature of the charges against him, 2) the possible penalties, and 3) the 'dangers and disadvantages of self-representation.' " [United States v.] Erskine, 355 F.3d [1161] at 1167 [(9th Cir. 2004)] (quoting United States v. Balough, 820 F.2d 1485, 1487 (9th Cir.1987)). . . . See also(describing the government's burden as "a heavy one"). Ordinarily, only the defendant's colloquy with the court at the *Faretta* hearing is relevant to the waiver analysis. [United States v. Mohawk, 20 F.3d 1480, 1484 (9th Cir.1994).] . . . However, a "limited exception" exists whereby "a district court's failure to discuss each of the elements in open court will not necessitate automatic reversal when the record as a whole reveals a knowing and intelligent waiver." Balough, 820 F.2d at 1488.

U.S. v. Forrester, 512 F.3d 500, 506-07 (9th Cir. 2008). The focus of the inquiry is on what the defendant understood at the time he entered the Faretta waiver. U.S. v. Mohawk, 20 F.3d at 1484 (citing Balough, 820 F.2d at 1489). A court's failure to secure a valid Faretta waiver, which includes an accurate advisement as to maximum penalties, constitutes per se prejudicial error, and the harmless error standard is inapplicable. Erskine, 355 F.3d at 1167.

The record reflects the following facts relevant to the inquiry at bar. On May 18, 2004, a criminal complaint was filed in the San Joaquin County Superior Court charging petitioner with felony possession of cocaine and misdemeanor possession of a smoking device. Clerk's Transcript (CT) at 136-137. The complaint also alleged one prior serious felony conviction. Id. at 137. On the same day, petitioner was arraigned on those charges before the Honorable James E. Hammerstone. Supplemental Reporter's Transcript (SRT) at 29-32.[2] At the arraignment, the following exchange took place between the court and petitioner:

/////

---

[2] The transcript identifies the date of the arraignment as May 18, 2005, but that appears to be an error. See CT at 135.

|   |   |
|---|---|
| 1 | THE COURT: You're charged in Count 1, on May 16th, with possession of cocaine, a felony. County 2, possession of a crack pipe, a misdemeanor. It's also alleged you have a prior serious felony conviction. |
| 2 | |
| 3 | |
| 4 | Your next matter is a violation of probation, this states you were placed on probation March 18th of last year. It's alleged you're in violation of that because of the new charges. And the probation officer is recommending that you be sent to prison. |
| 5 | |
| 6 | THE DEFENDANT: That's not guilty of the new charge, your honor. |
| 7 | |
| 8 | THE COURT: Do you understand what the felony charges are? |
| 9 | THE DEFENDANT: I do. |
| 10 | THE COURT: What do you want to do with your case today? |
| 11 | THE DEFENDANT: I want to face to the grand jury myself. I want to represent myself. |
| 12 | THE COURT: In your situation, someone who represents himself has an idiot for a lawyer, or a fool for a client. |
| 13 | |
| 14 | THE DEFENDANT: I heard that before from you. |
| 15 | THE COURT: You were in pro per on other matters. I'll allow you to be pro per. |
| 16 | What do you want to do about your cases today? |
| 17 | THE DEFENDANT: Can I actually get a lawyer? |
| 18 | THE COURT: Deny. |

SRT at 32-33. On July 6, 2004, petitioner appeared in front of a different judge, Judge Harrington, for a pretrial conference. Shortly after the conference started, Judge Harrington and petitioner had a lengthy exchange concerning petitioner's request for an interpreter. Augmented Reporter's Transcript (ART) at 5-7. Judge Harrington interpreted petitioner's request as a request for a lawyer, but petitioner repeated that he was not asking for a lawyer. Id. Thereafter, Judge Harrington directed petitioner to review and initial a Faretta waiver form. Id. at 7-8. Judge Harrington continued the matter until the afternoon. Id. at 8. When the matter was recalled, the judge went over each provision of the form with petitioner. Id. at 9-25. During the

1   proceedings, the following colloquy occurred between petitioner and the court:

2   THE COURT: Okay. 13, "I'm aware that in the event I plead guilty or after the trial I am found guilty, I have a right to make an application for probation, but that I am not entitled to probation as a matter of right. I am further aware that the punishment specified by the Penal Code for the crimes with which I am charged are as follows: The minimum sentence would be – I guess technically zero, maximum sentence would be five years plus time – times two?

MR. HEALY: It's a – the range for a violation of 11350, 16 months for low term, two years for midterm, then three years for the upper term. He also had as –

THE COURT: Doubled for the strike.

MR. HEALY: But he also, according to my record, has five prison priors. They could be alleged.

THE COURT: The minimum sentence would be the low term times two, which would be 32 months, and the upper term would be three years times two, 11 years.

Is that right?

MR. HEALY: That's correct.

THE COURT: I'm filling these in because you did not fill them in.

Do you understand the maximum terms that you – minimum and maximum terms you could be sentenced to? Do you understand?

THE DEFENDANT: No.

THE COURT: You don't understand that?

THE DEFENDANT: Uh-uh.

THE COURT: Is that no?

THE DEFENDANT: That's no.

THE COURT: You have not initialled that –

THE DEFENDANT: That's because I don't know – I didn't know what it was –

THE COURT: I'm telling you now.

THE DEFENDANT: I don't understand it.

> THE COURT: You don't understand the maximum and minimum?
>
> THE DEFENDANT: I don't know – I don't understand.
>
> THE COURT: You don't want to initial that, is that right?
>
> THE DEFENDANT: No.
>
> . . .
>
> THE COURT: Technically he can still enter a plea of not guilty and not guilty by reason of insanity. That can be – life is the duration. Do you understand that?
>
> THE DEFENDANT: No.
>
> THE COURT: You don't want to sign that?
>
> 17, "I understand that in the event that prior felony convictions are pled and proved against me, that may affect any sentencing as follows:"
>
> It would add one year for five prison priors, a total of five years. Do you understand that?
>
> THE DEFENDANT: Yeah.
>
> THE COURT: Do you want to sign that paragraph?
>
> THE DEFENDANT: No.
>
> THE COURT: Okay. Number 18, "I'm aware of the fact that we have in the State of California the Habitual Criminal Law and that if I fall within the provisions of either sections 6448 of the Penal Code I may be adjudged a habitual criminal and may be punished by imprisonment in the state prison for life."
>
> You did not sign that. Do you understand that?
>
> THE DEFENDANT: No.

ART at 21-24. After going over the form with petitioner, Judge Harrington made the following ruling:

> The Court is going to deny the petition to proceed in pro per for the following reasons: The defendant does not understand his right to have the recommendation of counsel on whether on not he

/////

should proceed. He does not wish to acknowledge understanding
of that. And he's told me he does not understand that.[3]

Additionally, the Court finds that Mr. Gassoway has been – I've
tried to apprize him of the minimum and maximum sentences, he
indicates he does not understand and does not wish to acknowledge
that paragraph 13.

Additionally, he does not wish to acknowledge and says he does
not understand the consequences of – there's an insanity plea and
he also does not understand the five prison priors that he could
possibly face. In addition, he does not understand the habitual
criminal law provision.

The Court is going to deny the request event though Judge
Hammerstone allowed it earlier and there was no faretta waiver in
the court file.

The Court finds at this time that it is – it would be inappropriate
to allow Mr. Gassoway to represent himself.

Id. at 26.

Two days later petitioner was back before Judge Hammerstone for arraignment.
During the arraignment, Judge Hammerstone reversed Judge Harrington as follows:

I have read a copy of the proceedings had before Judge
Harrington on July 6th whereby he indicated that Mr. Gassoway
should not proceed in pro per.

However, one of the rulings – the grounds for that is that Mr.
Gassoway told him – him being Judge Harrington – that he did not
understand that he would have the right to talk to a lawyer in
regards to his waiver of counsel and his desire to proceed in pro
per.

I don't think that is a component of a competent waiver. SO,
Mr. Gassoway, you remember what Judge Harrington said to you
on July 6th, when you were in court?

THE DEFENDANT: Yes.

THE COURT: Is it your wish at this time to give up your right to
have a lawyer?

/////

---

[3] This part of the ruling refers to an exchange between petitioner and the court found at 15-17 of the ART.

1
2
3
4
5
6

    THE DEFENDANT:  No.  I have got to defend myself, Your Honor.  I'd rather represent myself.

    THE COURT:  Do you give up your right to be represented by a lawyer?

    THE DEFENDANT:  Yes.

    THE COURT:  All right.

    I won't appoint the public defender.

SRT at 46-47.  Judge Hammerstone did not revisit the question of whether petitioner understood the penalties he was facing.

        As noted above, the state court of appeal affirmed Judge Hammerstone's decision on the ground that the record showed that petitioner had been "apprised" of his right to confer with an attorney about his decision to represent himself and about the sentencing risks that he faced.  See People v. Gassoway, supra, slip op. at 9.  However, in order for a Faretta waiver to be "knowing and intelligent" the record must show that the judge insured that the petitioner understood the possible penalties, or that such understanding is apparent in the record.  U.S. v. Forrester, supra.  Here, beyond a general reference made at the first hearing to the possibility of a prison sentence, Judge Hammerstone did not discuss possible penalties with petitioner, while Judge Harrington, who did specifically discuss possible penalties with petitioner, concluded that he did not understand some of the possible penalties and either did not understand or did not want to acknowledge others.

        The record does not show either that Judge Hammerstone took steps to insure that petitioner understood the possible penalties, or that petitioner did understand those penalties.  For that reason, this court finds that petitioner's Faretta waiver was not knowing and intelligent, and that the state court's decision upholding Judge Hammerstone's final decision allowing petitioner to represent himself was contrary to applicable principles of federal law.

/////

/////

Accordingly, IT IS HEREBY ORDERED that petitioner's application for a writ of habeas corpus is granted. Respondent is directed to release petitioner from custody unless, within thirty days from the date of this order, the state elects to retry petitioner.

DATED: August 12, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

12
gass0652.hc